HENRY BUTLER *v.* THE STATE.

1. EVIDENCE — CREDIT OF WITNESS. — Though in general the rules of evidence allow a witness to be contradicted only in such statements as are relevant to the issue, yet for the purpose of impeaching the credit of a witness it is competent to prove that he has made statements out of court contrary to his testimony at the trial.

2. SAME — ACCOMPLICE. — In a trial for aiding a felon to escape from custody, the defence elicited from the principal State's witness a denial that he had on certain occasions and to certain persons encouraged the prisoner's friends to attempt his release, and proposed to aid in effecting it. Subsequently the defence proposed, but were not allowed, to contradict the denial by the testimony of the persons designated. *Held*, error. The excluded testimony was competent to show that the State's witness was an accomplice, on whose uncorroborated evidence a conviction could not be had.

3. SAME — CHARGE OF THE COURT. — When there was evidence tending to show complicity of a material State's witness in the offence charged against the defendant, the court should have instructed the jury on the law governing accomplice testimony.

APPEAL from the District Court of San Jacinto. Tried below before the Hon. E. HOBBY.

The facts germane to the rulings are stated in the opinion.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. From questions which were raised on the rulings of the court as to the admission of evidence on the trial below, and on the charge of the court, as these matters are set out in the record, we are led to conclude that it was at least a part of the theory of the defence that

Baldwin, the deputy-sheriff charged with the custody of the prisoner at the time the appellant was accused of procuring his release, at the time and in the manner charged in the indictment, himself connived at and participated in effecting the escape of Clark, the prisoner. It is shown by the testimony of Baldwin that he was a deputy-sheriff under the sheriff of the county; that he, with others, and among them this appellant, had gone to the jail in aid of the sheriff, to convey an intoxicated man to jail; that whilst at the jail the appellant got permission of the sheriff to give Clark, the prisoner, a drink of whiskey. He further stated that when the sheriff gave the appellant permission to give Clark the whiskey, the sheriff gave him (Baldwin) the keys to close the outside door of the jail, which he states was left open during the day for purposes of ventilation. It seems, also, from the testimony of this witness, that there were two cells on the inside of the jail, one of which was occupied by the prisoner Clark, and the other by the intoxicated man. The man who attended to feeding the prisoners being at the place, he was requested by the defendant to go and get some crackers, sardines, and tobacco for the prisoner Clark. The man alluded to was named Ruffin. Ruffin refused to go for the crackers, etc., without permission from Baldwin, the deputy. After being importuned by the defendant, the witness Baldwin says he reluctantly consented. After Ruffin left, the witness says the defendant came to him (witness) and said, "You can now give Clark the whiskey;" and at the same time pulled the whiskey out and handed it to the witness, who, it appears, had been lurking at the cell in which the intoxicated man was confined, in conversation with him. We quote what follows from the testimony as set out in the statement of facts: "I then passed from the cell where Grissom [the intoxicated man] was to the cell where Clark was, and was looking for an opening in the bars of the door of the cell large enough to put the bottle through; Clark, the prisoner, found an opening large enough, and I

passed the bottle through to him.   Then Butler drew out
his knife, and told me that unless I opened the cell door and
turned Clark out he would cut my throat.   I told him then
he ought not to act in that way; that he was already in
trouble, and that this would aggravate it; that it would
do Clark no good, and that he could not escape; that it
would ruin me as an officer.   Clark begged him not to kill
me.   He said he had nothing against me, but that if I did
not open the door he would pin me to the wall."   This is
not all, but only a portion of the testimony of this witness.
From this it appears that at the time the prisoner Clark
was liberated from the cell and jail the only persons at the
jail were the two prisoners, the appellant (Butler), and the
deputy-sheriff (Baldwin).   There was some conflicting and
contradictory testimony.

It is shown by a bill of exceptions signed by the judge,
and embodied in the transcript, that the witness Baldwin
was asked by the defendant's counsel, on cross-examina-
tion, this question: " Did you, in Cold Springs, San Jacinto
County, Texas, on the night before Charles Clark escaped
from your custody, to wit, on the 4th day of April, 1879,
in the back room of Mat Thompson's grocery, no one else
being present but you two, tell Thompson that you (Bald-
win) would go with any of Clark's friends and assist in any
way you could in getting Clark out of jail?"   To which
(the State not objecting) the witness Baldwin answered:
" No, I did not."   At the proper time Mat Thompson, by
the defendant, was put upon the stand, and he was asked
by defendant's counsel: " Did not Baldwin, the witness for
the State, tell you in the back room of your grocery, on
the 4th day of April, 1879, the night before Clark escaped
from Baldwin's custody, in Cold Springs, San Jacinto
County, Texas, no one else being present but you two,
that he, Baldwin, would go with Clark's friends and assist
in any way he could in getting Clark out of jail?"   To
which question the State objected, and the court sustained
the objection.

It is shown by another bill of exceptions that this same witness, Baldwin, while testifying, was asked by the defendant's counsel, on cross-examination, if he did not, at a certain time and place mentioned, the night before the escape of Clark, say to Duke Loyd "that it was a shame for Clark's friends to let him (Clark) lie in jail; that they ought to get him out, and that you would do all you could towards getting him (Clark) out; and that if you had a horse, or two horses, you would leave the country with Clark?" To which the witness (the State not objecting) answered in the negative. At the proper time the defendant's counsel put Duke Loyd on the stand, and asked him concerning the matter of this conversation; to which the State, by counsel, objected, and the court sustained the objection.

The court, in its charge, gave no instructions to the jury on the subject of accomplices. The charge was excepted to, and the counsel for the defendant asked the court to give to the jury the following special instruction: —

"In all cases the law treats a party who aids by acts or encourages by words one in the commission of a crime as an accomplice. If you believe from the evidence that W. O. Baldwin, a witness for the State, either aided by acts or encouraged by words the defendant in turning loose Clark, as alleged in the indictment, then in that case the evidence of Baldwin alone is not sufficient to authorize you in finding defendant guilty, but there must be other evidence corroborating Baldwin's statements going to show the guilt of defendant."

We are of opinion the court erred in excluding the testimony of Thompson and Loyd under the circumstances above recited. It is true that, by the rules of evidence, it is only in such matters as are relevant to the issue that a witness can, in general, be contradicted. But it is a rule of evidence that the credit of a witness may be impeached by proof that he has made statements out of court contrary to what he has testified at the trial. 1 Greenl. on Ev.,

sect. 462. We deem the testimony offered, under the circumstances of this case, as bearing on the issue being tried, and permissible on the question of impeachment of the State's witness, Baldwin; but however this may be, it was certainly admissible as tending to show whether the State's witness, Baldwin, was a participant in the crime charged, and, when taken in connection with the other evidence, to enable the court to determine and the jury to pass upon the fact whether he had any such participation in the offence charged as that, under the law, his testimony would stand alone, or whether it required corroboration in order to warrant a conviction. We are of opinion that, under the peculiar circumstances surrounding the defendant, he was entitled to the benefit of the excluded testimony.

The judge gave as a reason for declining to give a charge on the subject of accomplices, the ground that there " was no evidence tending to show that there was any complicity on Baldwin's part in the transaction." If the testimony offered and excluded had been admitted, we cannot say the case would not have been different. To our minds, it would seem like making the commission of one error an excuse for committing another. The question in *Brown's Case*, 6 Texas Ct. App. 286, was unlike the one in the present case.

Whilst the charge asked and refused is in the main an accurate enunciation of the law, yet its verbiage can hardly be said to be free from objection. But the attention of the judge having been called to the subject, he should have given the charge as asked, if correct and applicable to the case; and if not, he should have so modified it as to have properly submitted the question to the jury. Code Cr. Proc., art. 697.

With reference to the present inquiry, we are of opinion that the judge should have submitted to the jury the question whether or not the evidence showed that the witness had participated in the commission of the offence with which the defendant was accused; and if so, the instruction

should have followed that, if the jury so believed, in that event they could not convict on the uncorroborated testimony of an accomplice ; and so shaping the charge as to conform to art. 741, Code of Criminal Procedure, and to the decisions of the Supreme Court and this court as to who are accomplices in the sense of witnesses requiring corroboration.

The above are the most important questions presented, and form the basis of our action on this appeal. Other matters are presented, but as they are not likely to arise in the same form on another trial, they are not specially relied upon here.

For the errors above mentioned a new trial should have been awarded the defendant in the court below, and on account of which the judgment must be reversed and the cause remanded.

*Reversed and remanded.*